NICOLA T. HANNA
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
MACK E. JENKINS (Cal. Bar No. 242101)
Assistant United States Attorney
Chief, Public Corruption & Civil Rights Section
JULIA GEGENHEIMER
Department of Justice Trial Attorney
Criminal Section, Civil Rights Division
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-2091
    Facsimile: (213) 894-6436
    E-mail:    mack.jenkins@usdoj.gov
             julia.gegenheimer@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>           v.<br><br>CARLOS HERNANDEZ, et al.,<br>  [CARLOS HERNANDEZ]<br><br>        Defendant. | No. CR 16-442-CAS-1<br><br>PLEA AGREEMENT FOR DEFENDANT<br>CARLOS HERNANDEZ |

    1.    This constitutes the plea agreement between CARLOS HERNANDEZ ("defendant") and the United States Attorney's Office for the Central District of California and the Department of Justice Civil Rights Division (collectively, "the USAO") in the above-captioned case.  This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

## DEFENDANT'S OBLIGATIONS

2.   Defendant agrees to:

a.   At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to Counts One, Two, Four, Seven, and Eight of the Indictment in United States v. Carlos Hernandez, et al., CR 16-442-CAS, which charge defendant with violations of Title 18 U.S.C §§ 241 (Conspiracy to Violate Civil Rights), 1959 (Violent Crime in Aid of Racketeering), 844(h) (Use Fire and Carry Explosives to Commit Another Federal Felony), and 924(c) (Use and Possession of a Firearm in a Crime of Violence), and a violation of Title 42 U.S.C. § 3631 (Fair Housing Act).

b.   Not contest the Factual Basis agreed to in this agreement.

c.   Abide by all agreements regarding sentencing contained in this agreement.

d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.   Be truthful at all times with Pretrial Services, the United States Probation Office, and the Court.

g.   Pay the applicable special assessments at or before the time of sentencing unless defendant lacks the ability to pay and prior to sentencing submits a completed financial statement on a form to be provided by the USAO.

## THE USAO'S OBLIGATIONS

3.    The USAO agrees to:

a.    After defendant's guilty plea to Counts One, Two, Four, Seven, and Eight, and at the time of sentencing, move to dismiss the remaining counts of the Indictment. Defendant agrees, however, that at the time of sentencing the Court may consider any dismissed charges in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be inposed after consideration of the Sentencing Guidelines and all other relevant factors under 18 U.S.C. § 3553(a).

b.    Not contest the Factual Basis agreed to in this agreement.

c.    Abide by all agreements regarding sentencing contained in this agreement.

d.    At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offenses up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and, if necessary, move for an additional one-level reduction if available under that section.

## NATURE OF THE OFFENSES

4.    Defendant understands that for defendant to be guilty of the crime charged in Count One, that is, Conspiring to Violate Civil Rights, in violation of Title 18, United States Code, Section 241, the following must be true: (1) a conspiracy existed which defendant joined; (2) the object of the conspiracy was to injure, oppress, threaten or intimidate a person or persons in the free exercise or enjoyment of a right protected by the Constitution or laws of the

3

United States, in this case, that is, the right to occupy a dwelling free from injury, intimidation, and interference based on race or color; and (3) the planned interference with a protected right was willful.

5. Defendant understands that for defendant to be guilty of the crime charged in Count Two, that is, Violent Crime in Aid of Racketeering, in violation of Title 18, United States Code, Section 1959(a)(3), the following must be true: (1) an enterprise affecting interstate commerce existed during the time period set forth in Count Three; (2) the enterprise engaged in racketeering activity; (3) defendant committed an assault with a dangerous weapon; (4) defendant's purpose in committing assault with a dangerous weapon was to gain entrance to, or to maintain, or to increase his position in the enterprise.

6. Defendant understands that for defendant to be guilty of the crime charged in Count Four, that is, Interference With the Fair Housing Act, in violation of Title 42, United States Code, Section 3631, the following must be true: (1) defendant used force or threats of force to intimidate or interfere with, or to attempt to intimidate or interfere with, a person; (2) defendant did so because of that person's race or color; and (3) because that person was enjoying a housing right, namely renting or occupying a dwelling.

7. Defendant understands that for defendant to be subject to the statutory maximum sentence set forth below with respect to Count Four, the government must prove beyond a reasonable doubt that defendant used a dangerous weapon, explosives, or fire in the commission of the offense. Defendant admits that defendant, in fact, used a dangerous weapon, explosives, and fire in the commission of

the interference with the Fair Housing Act offense charged in Count Four.

8. Defendant understands that for defendant to be guilty of the crime charged in Count Seven, that is, Use Fire, Carry Explosive to Commit Another Felony, in violation of Title 18, United States Code, Section 844(h)(1) the following must be true: (1) defendant used or carried fire; and (2) defendant did so to commit a felony which may be prosecuted in federal court.

9. Defendant understands that for defendant to be guilty of the crime charged in Count Eight, that is, Use and Possession of a Firearm During a Crime of Violence, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i) the following must be true: (1) defendant knowingly used and carried a firearm; and (2) defendant possessed that firearm in furtherance of a crime of violence.

### PENALTIES

10. Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 241, is: 10 years' imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

11. Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1959(a)(3), as charged in Count Two of the Indictment, is: 20 years' imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

12.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 42, United States Code, Section 3631, as charged in Count Four of the Indictment, is: 10 years' imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

13.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 844(h)(1) as charged in Count Seven of the Indictment, is: 10 years' imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

14.   Defendant understands that the statutory mandatory minimum sentence that the Court must impose for a violation of Title 18, United States Code, Section 844(h)(1) as charged in Count Seven of the Indictment, is 10 years' imprisonment, in addition to the punishment provided for the underlying felony committed during the commission of Count Seven.

15.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 924(c)(1)(A)(i) as charged in Count Eight of the Indictment is: life imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

16.   Defendant understands that the statutory mandatory minimum sentence that the Court must impose for a violation of Title 18, United States Code, Section 924(c)(1)(A)(i) as charged in Count Eight of the Indictment, is 5 years' imprisonment, in addition to the punishment provided for the underlying crime of violence committed during the commission of Count Eighth.

17.   Defendant understands, therefore, that the total maximum sentence for all offenses to which defendant is pleading guilty is: life imprisonment; a five-year period of supervised release; a fine of $1,000,000 or twice the gross gain or gross loss resulting from the offenses, whichever is greatest; and a mandatory special assessment of $400.   Defendant further understands that the total mandatory minimum sentence that the Court must impose is 15 years' imprisonment.

18.   Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.   Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release.

19.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that once the court accepts defendant's guilty plea, it will be a federal felony for defendant to possess a firearm or ammunition.   Defendant understands that the conviction in this

case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

20.  Defendant understands that, if defendant is not a United States citizen, the felony conviction in this case may subject defendant to: removal, also known as deportation, which may, under some circumstances, be mandatory; denial of citizenship; and denial of admission to the United States in the future.  The court cannot, and defendant's attorney also may not be able to, advise defendant fully regarding the immigration consequences of the felony conviction in this case.  Defendant understands that unexpected immigration consequences will not serve as grounds to withdraw defendant's guilty plea.

<u>FACTUAL BASIS</u>

21.  Defendant admits that defendant is, in fact, guilty of the offenses to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided in Attachment A and agree that this statement of facts is sufficient to support pleas of guilty to the charges described in this agreement and to establish the Sentencing Guidelines factors set forth below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

## SENTENCING FACTORS

22.   Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).   Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate between the mandatory minimum and up to the maximum set by statute for the crimes of conviction.

23.   Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| Base Offense Level: | 24 | [U.S.S.G. §§ 2H1.1., 2K1.4] |
|---|---|---|
| Hate Crime Motivation: | +3 | [U.S.S.G. § 3A1.1] |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.   Defendant understands that, absent a finding from the Court that defendant provided substantial assistance, the Court must sentence defendant to a term of 10 years' imprisonment on Count Seven, in addition to the penalty for the underlying felony committed during the commission of Count Seven, and 5 years' imprisonment on Count Eight, in addition to the penalty for the underlying crime of violence committed during the

commission of Count Eight (for a total of at least 15 years' imprisonment).

24.  Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

25.  Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

WAIVER OF CONSTITUTIONAL RIGHTS

26.  Defendant understands that by pleading guilty, defendant gives up the following rights:

     a.  The right to persist in a plea of not guilty.

     b.  The right to a speedy and public trial by jury.

     c.  The right to be represented by counsel – and if necessary have the court appoint counsel – at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel – and if necessary have the court appoint counsel – at every other stage of the proceeding.

     d.  The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

     e.  The right to confront and cross-examine witnesses against defendant.

     f.  The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

1  g.   The right not to be compelled to testify, and, if

2  defendant chose not to testify or present evidence, to have that

3  choice not be used against defendant.

4  h.   Any and all rights to pursue any affirmative defenses,

5  Fourth Amendment or Fifth Amendment claims, and other pretrial

6  motions that have been filed or could be filed.

7  <u>WAIVER OF APPEAL OF CONVICTION AND SENTENCE</u>

8  27.   Defendant understands that, with the exception of an appeal

9  based on a claim that defendant's guilty pleas were involuntary, by

10 pleading guilty defendant is waiving and giving up any right to

11 appeal defendant's convictions on the offenses to which defendant is

12 pleading guilty.

13 28.   Defendant agrees that defendant gives up the right to

14 appeal all of the following: (a) the procedures and calculations used

15 to determine and impose any portion of the sentence, with the

16 exception of defendant's criminal history category (b) the term of

17 imprisonment imposed by the Court; (c) the fine imposed by the court,

18 provided it is within the statutory maximum; (d) the term of

19 probation or supervised release imposed by the Court, provided it is

20 within the statutory maximum; and (e) any of the following conditions

21 of probation or supervised release imposed by the Court: the

22 conditions set forth in General Orders 318, 01-05, and/or 05-02 of

23 this Court; the drug testing conditions mandated by 18 U.S.C.

24 §§ 3563(a)(5) and 3583(d).

25 29.   Defendant understands and agrees that defendant waives and

26 gives up the right to contest the conviction and sentence or the

27 manner in which the sentence was imposed in any post-conviction

28 proceeding, with the exception of ineffective assistance of counsel

claims. This waiver includes, but is not limited to, a motion brought under Title 28, United States Code, Section 2255, and any type of proceeding claiming double jeopardy or excessive penalty as a result of any forfeiture ordered or to be ordered in this case.

30. Defendant's knowing and voluntary waiver of the right to appeal or collaterally attack the conviction and sentence includes waiving the right to raise on appeal or on collateral review any argument that (1) the statutes to which the defendant is pleading guilty are unconstitutional and (2) the admitted conduct does not fall within the scope of the statutes.

## RESULT OF WITHDRAWAL OF GUILTY PLEA

31. Defendant agrees that if, after entering guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty pleas on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

## EFFECTIVE DATE OF AGREEMENT

32. This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

## BREACH OF AGREEMENT

33. Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached. For example, if defendant knowingly, in an interview, before a grand jury, or at trial, falsely accuses another person of criminal conduct or falsely minimizes defendant's own role, or the role of another, in criminal conduct, defendant will have breached this agreement. All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then:

a. If defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas.

b. The USAO will be relieved of all its obligations under this agreement; in particular, the USAO will no longer be bound by any agreements concerning sentencing and will be free to seek any sentence up to the statutory maximum for the crimes to which defendant has pleaded guilty.

1          c.    The USAO will be free to criminally prosecute

2    defendant for false statement, obstruction of justice, and perjury

3    based on any knowingly false or misleading statement by defendant.

4                **COURT AND PROBATION OFFICE NOT PARTIES**

5        34.    Defendant understands that the Court and the United States

6    Probation Office are not parties to this agreement and need not

7    accept any of the USAO's sentencing recommendations or the parties'

8    agreements to facts or sentencing factors.

9        35.    Defendant understands that both defendant and the USAO are

10   free to: (a) supplement the facts by supplying relevant information

11   to the United States Probation Office and the Court, (b) correct any

12   and all factual misstatements relating to the Court's Sentencing

13   Guidelines calculations and determination of sentence, and (c) argue

14   on appeal and collateral review that the Court's Sentencing

15   Guidelines calculations and the sentence it chooses to impose are not

16   error, although each party agrees to maintain its view that the

17   calculations in paragraph 21 are consistent with the facts of this

18   case.  This paragraph permits both the USAO and defendant to submit

19   full and complete factual information to the United States Probation

20   Office and the Court, even if that factual information may be viewed

21   as inconsistent with the Factual Basis or Sentencing Factors agreed

22   to in this agreement.

23       36.    Defendant understands that even if the Court ignores any

24   sentencing recommendation, finds facts or reaches conclusions

25   different from those agreed to, and/or imposes any sentence up to the

26   maximum established by statute, defendant cannot, for that reason,

27   withdraw defendant's guilty pleas, and defendant will remain bound to

28   fulfill all of defendant's obligations under this agreement.

Defendant understands that no one – not the prosecutor, defendant's attorney, or the Court – can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

### NO ADDITIONAL AGREEMENTS

37. Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

### PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

38. The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

NICOLA T. HANNA
United States Attorney

_____     ____4/8/19____
MACK E. JENKINS                      Date
JULIA GEGENHEIMER
Assistant United States Attorneys


_____     ____4/8/19____
CARLOS HERNANDEZ                     Date
Defendant


_____     ____4/8/19____
ED ROBINSON                          Date

Attorney for Defendant
Carlos Hernandez

## CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.


_____          _____
CARLOS HERNANDEZ                          Date
Defendant

## CERTIFICATION OF DEFENDANT'S ATTORNEY

I am the defendant's attorney.  I have carefully and thoroughly discussed every part of this agreement with my client.  Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of guilty pleas pursuant to this agreement.

_____          4/10/19
ED ROBINSON                                Date
Attorney for Defendant
Carlos Hernandez

1          ATTACHMENT A: FACTUAL BASIS

2          The parties agree to the following facts and that, if this case

3    were to proceed to trial, the government would be prepared to prove

4    at least the following facts beyond a reasonable doubt:

5          1.    Throughout the period described in the above-captioned

6    Indictment, defendant CARLOS HERNANDEZ, aka "Creeper," aka "Rider,"

7    ("defendant"), along with codefendants 2, 3, 4, 5, 6, 7, 8

8    (collectively, the "codefendants" or "coconspirators"), were all

9    members of the Big Hazard street gang ("Hazard").

10         2.    Throughout the period described in the above-captioned

11   Indictment, Hazard is and was a multi-generational gang that claims

12   as part of its territory the Ramona Garden Housing Development

13   ("RGHD"), a public housing development located in the Boyle Heights

14   section of Los Angeles, within the Central District of California.

15   The RGHD was built using federal funds provided by the United States

16   Housing Authority and continues to receive financial assistance from

17   the United States Department of Housing and Urban Development.   The

18   RGHD is occupied primarily by Hispanic residents and also includes,

19   among others, a tiny fraction of African-American residents.

20         3.    Hazard, including its leaders, members, and associates,

21   constitutes a criminal "enterprise," as defined by Title 18, United

22   States Code, Section 1961(4).   That is, Hazard constitutes a group of

23   individuals associated together in an organization whose members and

24   associates function as a continuing unit for a common purpose of

25   achieving the objectives of the enterprise.   These objectives include

26   dominating the RGHD and monopolizing its criminal activity, including

27

28
     Defendant's Initials CH

drug trafficking.  As a result of its drug trafficking conduct, throughout the period described in the above-captioned Indictment, Hazard members and associates engaged in, and their activities in some way affected, interstate commerce.

4.   Between no later than early May 2014, defendant HERNANDEZ and the codefendants knowingly and willfully entered into an agreement to firebomb several of the apartments in the RGHD because of the occupants' race.  These apartments were occupied by African-Americans, including women and children ("the African-American victims").  The co-conspirators planned to use Molotov cocktails to attack residences in order to (1) threaten and intimidate the African-American victims for exercising and enjoying their federally protected right to live in the RGHD free from injury, intimidation, and interference based on race and (2) maliciously damage the residences occupied by the African-American victims.  Additionally, defendant HERNANDEZ knew that the firebombing could result in serious bodily injury to the African-American victims.  Defendant HERNANDEZ entered into this agreement in order to maintain his position within Hazard.

5.   On or about May 11, 2014, defendant HERNANDEZ gathered his codefendants at a gang hang out in Hazard territory to prepare for the firebombing.  Multiple codefendants were assembling Molotov cocktails to use in the firebombing.  Defendant HERNANDEZ told the codefendants that the Hazard gang was going to firebomb African-American residents of RGHD and that the firebombing was going to take place that night.

*Defendant's Initials* CM

2

6.    Defendant HERNANDEZ divided the codefendants into two groups of four.  Defendant HERNANDEZ told the two groups they would split up when they arrived at the RGHD, with one group going to target the African-American victims who resided in one area of the RGHD and the other group going to target the African-American victims who resided in a different area of the RGHD.  The codefendants then discussed the locations of each victim's residence.

7.    Defendant and codefendants 8, 6, and another coconspirator were in one group; HERNANDEZ was the leader of that group.  Codefendants 2, 4, 7, and another coconspirator were in the other group.  HERNANDEZ assigned everyone in his group a role in the firebombing.  Codefendant HERNANDEZ told the coconspirators in his group that the group would throw the Molotov cocktails into the African-American victims' apartments after the windows were broken and the Molotov cocktails were ignited.  Defendant HERNANDEZ gave codefendant 3 a lighter to ignite the Molotov cocktails.  HERNANDEZ also provided the codefendants with several Molotov cocktails, tools to break the windows, including a hammer, and materials to conceal their identities from the surveillance cameras in and around the RGHD and any witnesses.

8.    Defendant HERNANDEZ told the other codefendants who were present that the African-American victims were being targeted for firebombing because of their race.

9.    Defendant HERNANDEZ obtained a van to transport the codefendants.  HERNANDEZ was armed with a semiautomatic handgun in furtherance of the firebombing and to protect the Hazard members from any rivals they might encounter while preparing to travel to the

*Defendant's Initials* CH

3

1    firebombing and to use in case any of the firebombing victims

2    attempted to defend their homes from the attack.

3    　　　10.   Defendant HERNANDEZ drove the codefendants in the van

4    outside of the Projects and Hazard territory and parked the van.

5    After leaving the van, the codefendants walked to the RGHD using the

6    pedestrian overpass that runs over the I-10 freeway.   The

7    codefendants chose this route to the RGHD in order to avoid detection

8    by surveillance cameras.   Shortly after midnight on or about May 12,

9    2014, the codefendants entered the RGHD.   Once inside the RGHD, the

10   codefendants split up into their respective groups and proceeded to

11   their targets.

12   　　　11.   When defendant HERNANDEZ's group arrived at their victims'

13   residences, he and the coconspirators ignited the Molotov cocktails.

14   HERNANDEZ broke building windows so that the group could throw

15   Molotov cocktails through those windows.   Defendant HERNANDEZ also

16   instructed coconspirator 8 to light a Molotov cocktail.   When

17   HERNANDEZ attempted to throw one of the ignited Molotov cocktails

18   into Unit 61, he cut his right arm on the broken glass and began

19   bleeding profusely, which later required medical attention.

20   Defendant HERNANDEZ still managed to drop the Molotov cocktail he was

21   holding inside Unit 61.

22   　　　12.   Immediately after the firebombing attack, one of the

23   codefendants, driving the van obtained by conspirator HERNANDEZ,

24   transported defendant HERNANDEZ to White Memorial Hospital due to

25   injuries that HERNANDEZ incurred during the firebombing.   The

26   codefendant then drove himself and the other codefendants to a gang

27   location.   While at White Memorial Hospital, Defendant HERNANDEZ

28   *Defendant's Initials* CAH

4

purposefully provided hospital staff with a false account of how he sustained his injuries in an attempt not to incriminate himself or his coconspirators.

13.   In total, the codefendants maliciously struck and damaged four different residences in the RGHD with Molotov cocktails on May 12, 2014.   The units were: (a) Unit 124, occupied by Victim "1", Victim "1"'s minor children, and Victim "2"; (b) Unit 119, occupied by Victim "3", Victim "3"'s minor children, and Victim "4"; (c) Unit 61, occupied by Victim "5", and Victim "5"'s children and three grandchildren; (d) Unit 123, occupied by Victim "6", directly adjacent to Victim "1"'s Unit 124.

14.   Three of the four residences they struck and damaged were occupied by the African-American victims, who were the intended targets of the codefendants' firebombing.   Defendant HERNANDEZ and the codefendants targeted the victims because they are African-American and in order to force the African-American victims to move from the RGHD.   Defendant HERNANDEZ also committed the firebombing, in substantial part, to maintain his status in Hazard.

15.   Defendant HERNANDEZ and the codefendants knew that throwing firebombs into occupied residences after midnight created a substantial likelihood of causing serious bodily injury to at least one of the residents.   Such bodily injury could have included injuries sustained from broken glass, being hit by an ignited bottle, smoke inhalation, the explosion resulting from the firebomb, and any resulting fire.   Defendant HERNANDEZ also knew that the African-American victims, including children, could suffer serious bodily injury as a result of the firebombing.

*Defendant's Initials* CH

5